UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PAULA LANE, *et al*,

        Plaintiffs,

    v.

JOHN KITZHABER, Governor of the State of Oregon, *et al*,

        Defendants.

Case No. 3:12-cv-00138 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

On May 17, 2012, this Court granted defendants' motion to dismiss the original Complaint in part because some allegations sought "the forbidden remedy or requiring defendants to provide an adequate level of employment services to enable plaintiffs to obtain a competitive job." Opinion and Order (docket # 40, p. 15). Accordingly, plaintiffs filed their First Amended Complaint on May 29, 2012 (docket # 43), followed on May 24, 2013, by the United States filing its Complaint in Intervention (docket # 106). Defendants filed their Answers on June 15, 2012 (docket # 53), and June 26, 2013 (docket # 110), respectively.

1 – OPINION AND ORDER

Based on plaintiffs' responses to their interrogatories concerning the particular remedial measures being sought and other statements made by plaintiffs and the United States, defendants became concerned that the "integration criteria" sought by plaintiffs constitutes impermissible relief. Defendants considered filing a motion for partial summary judgment on this legal issue, but plaintiffs and the United States argued that such a motion was not appropriate. Although defendants disagree, they have elected to avoid any procedural issue by instead filing the pending Motion for Leave to File First Amended Answer with Counterclaim (docket # 127). The proposed counterclaim seeks a declaratory judgment that plaintiffs and the United States "are not entitled to injunctive relief against Oregon that includes any requirement related to job placement outcomes." Should the amendment be allowed, defendants intend to move for partial summary judgment on the counterclaim in order to narrow the scope of issues at trial.

## DISCUSSION

Under FRCP 15, leave to amend should be granted with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1051 (9th Cir 2003). In exercising its discretion to allow amendment, a court may consider "factors such as bad faith, undue delay prejudice to the opposing party, futility of amendment, and whether leave to amend has previously been granted." *In re Morris*, 363 F3d 891, 894 (9th Cir 2004). Defendants' proposed amendment does not involve any bad faith, undue delay, or prejudice to plaintiffs. However, defendants argue that it is futile, and this court agrees.

The primary problem is defendants' mischaracterization of the relief sought by plaintiffs and the United States. Plaintiffs' First Amended Complaint seeks an injunction requiring defendants to administer their employment services program in a manner that "includes supported employment services that *allows persons with disabilities the opportunity to work in*

*integrated settings*." Amended Complaint, p. 51 (emphasis added). As explained by this court when certifying the class, that request "does not mean that defendants must provide a community job to every qualified individual who wants one, but only that it must 'provide supported employment services to all qualified class members, consistent with their individual needs.'" *Lane v. Kitzhaber*, 283 FRD 587, 602 (D Or 2012). The United States' Complaint in Intervention similarly seeks to enjoin defendants to "provide individuals with I/DD who are in or are at risk of placement in segregated employment settings with services, programs, or activities that are *designed to allow individuals with I/DD to secure, maintain, and succeed in integrated employment settings*." Complaint, p. 27. Nothing in those pleadings suggests that plaintiffs and the United States are seeking an impermissible remedy.

Similarly, nothing in the discovery responses by plaintiffs and the United States requests any new relief beyond their pleadings. Defendants asked plaintiffs and the United States to admit that they "will ask the Court to issue injunctive relief requiring Defendants to ensure that" class members (or, for the United States, a "target population") "achieve certain employment outcomes." Scott Decl., Exs. 4 & 5. Plaintiffs and the United States denied these admissions, in part because they "do not anticipate asking the Court to issue injunctive relief that requires the Defendants to ensure that all members of the certified class achieve certain employment outcomes." *Id*. They further answered that in order to evaluate whether individuals are being served in the most integrated setting appropriate to their needs, the court:

> should consider integration criteria such as: whether and to what extent support employment services have resulted in integrated employment for persons who are or have been segregated in sheltered workshops; the average length of time spent by class members in integrated employment as opposed to segregated employment; and whether persons are compensated at levels commensurate with non-disabled persons performing the same or similar work.

*Id*, Ex. 5, p. 3

3 – OPINION AND ORDER

Defendants contend that the "integration criteria" will measure Oregon's provision of employment services by using job placement outcomes and, thus, are nothing more than a euphemism for guaranteeing employment. However, these discovery responses simply track the Supreme Court's holding in *Olmstead v. L.C. ex rel. Zimring*, 527 US 581 (1999), or the ADA's integration regulation, 28 CFR § 35.130(d), and are not tantamount to an impermissible "level of benefits" claim. Plaintiffs and the United States do not ask the court to order defendants to achieve a particular employment outcome for any given person or to guarantee any person a job. Instead, they are offering a way to measure the success of the employment services offered. In fact, beginning January 1, 2014, Executive Order 13-04 requires ODDS and OVRS to collect and report data similar to the "integration criteria" proposed by plaintiffs and the United States.

Moreover, defendants' proposed counterclaim is not ripe and does not yet present a justiciable controversy. The specific parameters of any injunctive relief ordered by the court will be determined by the scope of violations established at trial. Accordingly, whether the appropriate form of relief ever becomes an issue will depend upon the evidence admitted at trial, the court's findings of fact, and whether there is a dispute over defendants' compliance with the injunction. If plaintiffs and the United States prevail, a dispute could conceivably arise over whether the supported employment services being provided are, in fact, allowing individuals to receive services in the most integrated setting appropriate to their needs. Then – and only then – would the court need to consider whether, and to what extent, supported employment services provided under the injunction are consistent with certain integration criteria. Those integration criteria may or may not include job placement outcomes. At this juncture, however, there is no immediate, concrete dispute over this issue. The dispute is simply too hypothetical to be a ripe controversy, *i.e.*, "where the existence of the dispute itself hangs on future contingencies that

may or may not occur." *Clinton v. Acequia, Inc.*, 94 F3d 568, 572 (9th Cir 1996); *see also Portland Police Ass'n v. City of Portland ex rel. Bureau of Police*, 658 F2d 1272, 1274 (9th Cir 1981).

In any event, the proposed counterclaim against the United States is futile as barred by sovereign immunity. *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F Supp2d 258, 262 (DDC 2012) ("Because the counterclaim is barred by sovereign immunity, leave to add the counterclaim will be denied . . ."). The United States cannot be sued, even by another State and even for declaratory relief only, absent the consent of Congress. *People of the State of California ex rel. California Dep't of Fish and Game v. Quechan Tribe*, 595 F2d 1153, 1155 (9th Cir 1979); *see also Santa Clara Pueblo v. Martinez*, 436 US 49, 58-59 (1978) (barring suit for declaratory and injunctive relief based on sovereign immunity). Sovereign immunity applies to "a suit, whether couched as an original claim or as a counter claim." *United States v. $277,000 U.S. Currency*, 69 F3d 1491, 1493 (9th Cir 1995). Title II of the ADA, upon which defendants' proposed counterclaim is based, contains no waiver of sovereign immunity.

Defendants contend that a counterclaim for declaratory relief about the scope of that relief is not barred by sovereign immunity, citing *United States v. Agnew*, 423 F2d 513 (9th Cir 1970). However, that case merely allowed he assertion of a counterclaim against a sovereign "by way of set off or recoupment to defeat or diminish the sovereign's recovery." *Id* at 514. This is an example of a "narrow exception" to the principle of sovereign immunity for counterclaims seeking to recoup or offset the amount of a monetary judgment sought by the Government. *United States v. Park Place Assocs. Ltd.*, 563 F3d 907, 932 n 16 (9th Cir 2009). This recoupment exception does not apply to defendants' proposed counterclaim which does not attempt to recoup or offset the amount of a recovery. Instead, it seeks to limit the scope of

5 – OPINION AND ORDER

injunctive relief. Although this may be a distinction without a substantive difference, this court is reluctant to expand a narrow exception to sovereign immunity. In any event, even without a counterclaim, defendants retain the ability to argue that the court should deny all or any part of the relief requested by plaintiffs and the United States.

## **ORDER**

Defendants' Motion for Leave to File First Amended Answers with Counterclaim (docket #127) is DENIED.

DATED December 19, 2013.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
