UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PAULA LANE, *et al,*

             Plaintiffs,

    v.

JOHN KITZHABER, Governor of the State of
Oregon, *et al,*

             Defendants.

Case No. 3:12-cv-00138 -ST

DISCOVERY ORDER

STEWART, Magistrate Judge:

Having reach an impasse regarding the production of electronically stored information

("ESI") by defendants, specifically emails of key State officials from January 1, 2010, to the

present, plaintiffs and the United States of America have filed a Joint Motion to Compel

Electronic Discovery (docket #169) for an order:

1. Compelling defendants to hire a court-approved electronic discovery service provider

to assist them in the reasonable location, collection and production of ESI responsive to

plaintiffs' discovery requests;

2. Requiring the parties to confer as soon as reasonably possible as to search  terms and

custodians for email ESI with the assistance of the electronic discovery service provider; and

3. Entering an appropriate FRE 502(d) "clawback" agreement for the review of ESI.

1 –DISCOVERY ORDER

In response, defendants filed a Motion for Protective Order (docket #179) pursuant to FRCP 26(b)(2)(c) allowing them to follow a two-phase approach to producing responsive emails. In the first phase, the State will apply a narrower set of search terms to a more limited set of custodians for the shorter time period from January 9, 2012, to date, have its vendor (DTI) perform a thorough deduplication of the results and upload the results into the discovery software used by the Oregon Department of Justice (Summation), and then run searches to eliminate facially privileged documents from the set to be reviewed for production.  In the second phase, after receiving responsive documents from defendants, plaintiffs may submit a written request for additional, targeted email searches based on a showing of good cause.  If the parties cannot agree on whether or to what extent additional searches should be conducted, the court will resolve their dispute.

Defendants are searching for responsive ESI by utilizing Microsoft Exchange 2010 which appears to be an outdated, if not inadequate, tool that has likely contributed to both over inclusiveness and under inclusiveness.  Not only is it limited to Boolean search operators options (AND, OR and NOT), but it also lacks the ability to search for all file type attachments and discussion threads and does not provide other common ESI search capabilities, such as second-level Boolean search expressions and developer-added filtering expressions.

Defendants likely could have avoided inefficiencies and delays in their search had they selected a better information retrieval product or service from a vendor.  However, this is not a situation where defendants have unreasonably refused to negotiate search terms or a workable search protocol or where the delay has been egregious.  Over the past few months, defendants have devoted substantial time, effort and money running searches, reviewing results, and narrowing the search terms and custodians.  As a result, defendants have learned a great deal

2 –DISCOVERY ORDER

based on how custodians actually use various search terms and can apply those lessons to modify the approach going forward by carefully crafting the search terms and identifying ways to expedite the privilege review.  In fact, defendants have applied the majority of search terms precisely as requested by plaintiffs, and the only types of attachments not captured were scanned hard-copy documents which have already been collected and produced.

Pursuant to FRCP 26(b)(2)(C), a court may limit discovery by balancing the likely benefit of the discovery sought against the burden on the producing party.  At this juncture, this court is not convinced that requiring defendants to hire an expensive e-discovery vendor to start a new "industry standard" search protocol would significantly reduce the time or expense necessary to complete defendants' search for responsive ESI.  Instead, defendants' more targeted two-phase approach is warranted.

The parties dispute the appropriate date range for the ESI search.  Plaintiffs request emails from January 1, 2010, to the present, but defendants seek to limit the time period from January 1, 2012, to the present.  Since plaintiffs only seek prospective relief to remedy ongoing violations of law, the primary issue is whether the Executive Order 13-04 issued in April 2013, as implemented, will provide the employment-related services sought by plaintiffs.  However, plaintiffs argue that defendants' past practice with respect to enforcing the Employment First policy is relevant to determining whether the State has a genuine and reasonable commitment to moving class members from segregated to integrated employment settings.  Comparing the past to the present may well be a relevant consideration, but this court questions the need to obtain emails dating two year prior to the filing of this lawsuit and three year prior to the Executive Order, especially in light of defendants' voluminous production of responsive hard copy and

non-email electronic discovery covering that same time period.  Therefore, the date range for email ESI production is limited to the time period from January 1, 2012, to the present.

Another issue is the number of custodians subject to defendants' search.  Plaintiffs have narrowed their request to adding the following custodians due to their involvement in the implementation of the Employment First policy and Executive Order 13-04:  Mariah Forest, Mitch Kruska, Joli Schroader, Eleshia Lodridge, Shelly Reed, Ann Balzell, and Heather Lindsey. Since plaintiffs have no objection, these custodians must be added to the search.

Also at issue are six categories of search terms.  At the hearing, defendants voiced no objection to adding, and will add, three of those categories to their search, namely:

1.  "Oregon Technical Assistance" OR OTAC

2.  Olmstead AND employment

3.  The following vocational rehabilitation terms:
    "technical assistance services"
    "pre-vocational" OR "prevocational services"
    "work assessment"
    "job assessment"
    "vocational exploration"
    "job exploration"

However, defendants object to adding the remaining three categories of search terms. One category contains the following wage-related terms:  (1) subminimum or sub-minimum AND (wage OR employment OR job); and (2) minimum AND wage AND (employment OR job).  Plaintiffs are entitled to discovery regarding the payment of minimum and/or sub-minimum wages since it is a relevant criterion to evaluate the effectiveness of employment services offered by defendants to class members.  Although defendants are now collecting and reporting actual wages earned by the certified class pursuant to Executive Order 13-04, plaintiffs are entitled to discover additional information on how the collection of data is designed and

analyzed.  However, the proposed search terms are overly broad and not limited to members of the certified class.  Defendants shall propose a revised search that is more narrow, such as adding the term "disability,"  in order to search for and produce email ESI containing these wage-related terms.

Another disputed category includes the following facility-related term:  facility OR facilities) AND ("employment services" OR (employment AND (disability OR disabilities OR disabled)).  Defendants contend that this search is necessary because the State often characterizes "sheltered workshops" as facilities.  However, the terms "facility" and "facilities" are overly broad since DHS serves many disabled persons who are not class members, such as seniors and/or those with physical disabilities, who use nursing facilities, community-based care facilities, physical rehabilitation facilities and day-care facilities.  Again, however, plaintiffs are entitled to discover email ESI regarding facilities that qualify, but may not be expressly referred to in emails, as sheltered workshops.   Defendants shall propose a revised search that is more narrow, such as utilizing the NOT filter, in order to ensure production of email ESI that concern sheltered workshops.

The final category includes the following budget-related terms:  (1) budget AND ("employment services" OR (employment AND (disability OR disabilties OR disabled)); and (2) (appropriation OR appropriated OR appropriating) AND "employment services."  Although defendants have produced non-ESI budget-related documents back to 2007, plaintiffs contend that budget-related emails are relevant because they pertain to decisions about funding or other allocation of resources for employment services which may not be reflected in the final or near-final drafts of the budget documents.  Defendants do not contest that the funding of employment services to the class members is relevant and discoverable information, but correctly object to the

proposed search terms as overly broad by encompassing far more than the certified class.

Moreover, plaintiffs have already produced over 450 pages of budget-related emails relating to

implementation of the Executive Order and will produce budget-related emails sent or received

by the key policymakers.  Although defendants' search will not produce deleted emails, this

Court is not persuaded that plaintiffs' request will provide a benefit that outweighs the burden

imposed on defendants.

The final issue concerns whether the court should issue a clawback order pursuant to

FRE 502(c).  Defendants do no oppose such an order, provided it does not foreclose them from

continuing to review each electronically filtered document for responsiveness and privilege.

They note that emails are not always marked as privileged and that once a privileged email is

produced, the bell cannot be unrung.  Defendants have offered to forego this review if plaintiffs

will agree that anything marked privileged or sent or received by counsel may be withheld.

However, plaintiffs have rejected that offer.  Since plaintiffs and other federal agencies have

individually reviewed electronically screened documents to determine if they were responsive

and privileged, defendants are entitled to do the same.  Although this court will enter a clawback

order in order to allow a more economical analysis of ESI, the producing party is free to engage

in as exacting a privilege review as it wishes.

## **ORDER**

For these reasons, plaintiffs' and the United States' Joint Motion to Compel Electronic

Discovery (docket #169) and defendants' Motion for Protective Order (docket #179) are

GRANTED in part and DENIED in part as set forth above.

DATED February 28, 2014.                     s/ Janice M. Stewart

_____
Janice M. Stewart
United States Magistrate Judge

6 –DISCOVERY ORDER