UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PAULA LANE, *et al.*,
    on behalf of themselves and all others
    similarly situated; and

UNITED CEREBRAL PALSY OF OREGON
AND SOUTHWEST WASHINGTON, INC.,

    Plaintiffs,

v.

JOHN KITZHABER, Governor of the State of Oregon, *et al*,

    Defendants.

UNITED STATES OF AMERICA,

    Plaintiff-Intervenor,

v.

THE STATE OF OREGON,

    Intervenor-Defendant.

Case No. 3:12-cv-00138-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

Seven individuals with intellectual and developmental disabilities (I/DD) who are being served in sheltered workshops in Oregon have filed a Motion to Intervene (docket #200) as defendants in this case as of right under FRCP 24(a) or permissively under FRCP 24(b) for the

1 –OPINION AND ORDER

limited purposes of decertifying the class, actively participating in any settlement proceedings, or such further relief as they may seek. Plaintiffs and the United States oppose the proposed Intervenors while defendants support them. For the following reasons, the motion is denied.

## BACKGROUND

Plaintiffs are eight individuals in Oregon with I/DD who filed their initial Complaint on January 25, 2012 (docket #1), followed by their First Amended Complaint on May 29, 2012 (docket #42). On behalf of over 2,300 similarly situated individuals, they allege that the Governor of the State of Oregon and other state officials fail to "provide supported employment services to the named plaintiffs and members of the plaintiff class in order to allow them the opportunity to work in integrated employment settings and to avoid unnecessary segregation in sheltered workshops." First Amended Complaint, ¶ 37. They seek both injunctive and declaratory relief to remedy defendants' ongoing violations of Title II of the ADA, 42 USC §§ 12101 & 12131, *et seq*, and Section 504 of the Rehabilitation Act of 1973, 29 USC § 794.

On August 6, 2012, this court certified the class defined as "all individuals in Oregon with intellectual or developmental disabilities who are in, or who have been referred to, sheltered workshops" and "who are qualified for supported employment services." *Lane v. Kitzhaber*, 283 FRD 587, 602 (D Or 2012). The proposed Intervenors are members of the certified class, but believe that persons with I/DD should be allowed to work in an environment that best meets their abilities and choice, either in integrated or sheltered employment.

On May 22, 2013, the United States was allowed to permissively intervene as plaintiffs to also seek injunctive and declaratory relief under the ADA and Rehabilitation Act in order to "ensure the prioritization of integrated employment" and "to provide sufficient supported employment services for individuals with I/DD." Complaint in Intervention (docket #106), ¶ 49.

2 –OPINION AND ORDER

In April 2013, Governor Kitzhaber issued Executive Order 13-04 ("Executive Order") which mandates the expansion of supported employment services. The Executive Order directs state agencies to improve the delivery of employment services aimed at integrated employment, "including a significant reduction over time of state support of sheltered work and an increased investment in employment services." Dunbar Decl. (docket #208), Ex. 1, pp. 1-2. For example, the Executive Order directs state agencies to: (1) cease funding of vocational assessments in sheltered workshop settings as of July 1, 2014; (2) cease funding of new placements in sheltered workshop settings as of July 1, 2015; (3) provide employment services designed to help at least 2,000 I/DD individuals choose, get, learn, and keep jobs in integrated settings on a nine-year schedule; (4) pass rule changes that will prohibit local education agencies from contracting for employment services in sheltered workshops; and (5) improve transition services in the schools through several different measures, such as the hiring of specialists to help ensure that students will be prepared to transition to integrated work experiences. *Id* at 5-6, 11.

On January 17, 2014, defendants filed a status report on the progress of implementing the Executive Order. On April 21, 2014, this motion was filed.

## DISCUSSION

### I.    Intervention as of Right

An applicant must satisfy four criteria to intervene as of right under FRCP 24(a)(2):

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

3 –OPINION AND ORDER

*Perry v. Proposition 8 Official Proponents*, 587 F3d 947, 950 (9th Cir 2009) (citations omitted).

The applicant bears the burden of proving that all four requirements for intervention are met. *United States v. Alisal Water Corp.*, 370 F3d 915, 919 (9th Cir 2004) (citation omitted). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Id* (citation omitted). However, a "[f]ailure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry*, 587 F3d at 950 (citation omitted).

Even assuming that the proposed Intervenors' motion is timely, which plaintiffs and the United States dispute, this court finds that none of the other three elements for intervention as of right are satisfied.

### A.     No Significant Protectable Interest

"To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F3d 893, 897 (9th Cir 2011), citing *Northwest Forest Res. Council v. Glickman*, 82 F3d 825, 836 (9th Cir 1996). To justify intervention as of right under the first prong of this two-part test, the legally protectable interest must be "direct" and "non-contingent." *Dilks v. Aloha Airlines*, 642 F2d 1155, 1156-57 (9th Cir 1981) (*per curiam*), cited with approval in *Cal. ex rel. Lockyer v. United States*, 450 F3d 436, 441 (9th Cir 2006). The second "relationship" prong of the test is met "only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F3d 405, 410 (9th Cir 1998) (citation omitted).

The proposed Intervenors assert that they have a significant protectable interest in: (1) the prioritization, distribution, and management of government funds of which they are the ultimate beneficiaries; and (2) their ability to choose sheltered employment. Neither of those interests satisfy either prong of this test.

The first alleged interest concerns how Oregon allocates its two Medicaid waiver programs which service over 11,000 persons with I/DD in Oregon. This interest in the State's allocation of its resources is shared by all of Oregon citizens and, thus, is too general to be protected under the law. Courts have routinely held that citizens have no legally protected interest in a state's decision to appropriate, allocate, or prioritize its resources. *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 432 Fed App'x 94 (3rd Cir 2011) ("*Benjamin I*") (rejecting claim that potential reallocation of institutional resources to expand community services in an integrated setting gives rise to a protectable interest under FRCP 24(a)). As concluded by the Third Circuit:

> In virtually every suit successfully prosecuted against a governmental entity, the judgment will occasion some reallocation of limited public resources. Every competitor for those limited resources has an interest that potentially may be adversely affected by that reallocation. We have found no case, however, suggesting that the interest of such a competitor justifies intervention in litigation addressing issues in which he or she has no other interest. If such a competitor believes that he or she has an enforceable right for the services of the public entity, he or she may bring his or her own suit.

*Id* at 99.

Similarly here, the alleged interest of the proposed Intervenors in the general allocation of limited public resources is simply too tenuous to rise to the level of a significant protectable right.

5 –OPINION AND ORDER

The proposed Intervenors also lack a significant legally protectable interest under the ADA or other federal law in continuing to receive sheltered workshop services. The Executive Order may well limit access to sheltered workshops. However, neither the ADA nor the Rehabilitation Act creates a right to remain in the program or facility of one's choosing. Under *Olmstead v. L.C. ex rel. Zimring*, 527 US 581 (1999), "it is a violation of the [ADA and Rehabilitation Act] and their implementing regulations to force developmentally disabled patients to reside in institutions when they are able and willing to live" in more integrated community settings. *Benjamin I*, 432 Fed App'x at 95. However, numerous federal courts have rejected the "obverse *Olmstead*" argument that a premature discharge into the community violates the ADA or Rehabilitation Act. "There is no ADA provision that *providing* community placement is a discrimination. It may be a bad medical decision, or poor policy, but it is not discrimination based on disability." *Richard S. v. Dep't of Developmental Servs. of Cal.*, No. SA CV 97- 219-GLT(ANx), 2000 WL 35944246, at *3 (CD Cal Mar. 27, 2000). *See also Sciarrillo ex rel. St. Amand v. Christie*, No. 13- 03478 (SRC), 2013 WL 6586569, at *3-4 (D NJ Dec. 13, 2013) (no ADA or Rehabilitation Act claim arising from involuntary transfer due to closure of state-run residential care facilities for the developmentally disabled); *Ill. League of Advocates for Developmentally Disabled v. Quinn*, No. 13 C 1300, 2013 WL 3168758, at *5 (ND Ill June 20, 2013); *Richard C. ex rel. Kathy B. v. Houstoun*, 196 FRD 288, 292 (WD Pa 1999).

The proposed Intervenors have no significant legally protectable interest in the State's decision to allocate funds generally or in the State's decision whether to continue to operate the same number of sheltered workshop placements. Therefore, the first requirement for intervention as of right is not satisfied.

///

B. **<u>No Impairment of Interest</u>**

If allowed to proceed as a class action, the proposed Intervenors assert that plaintiffs' claims will impair their right to sheltered employment by eliminating their choice to remain in sheltered employment and forcing them into integrated employment.  Assuming that the proposed Intervenors have a legally protectable interest in remaining in sheltered workshops, that interest is not impaired by this litigation.

Contrary to the characterization by the proposed Intervenors, neither plaintiffs nor the United States seek to limit choice, eliminate service options, or compel persons with I/DD to participate in integrated employment.  Instead, plaintiffs and the United States have repeatedly affirmed that they are not asking the court to close sheltered workshop or to force anyone to leave a segregated setting through this litigation.

As alleged in their Prayer, plaintiffs seek to require the defendants to modify their practices to make integrated employment services available in order to "allow persons with disabilities the opportunity to work in integrated settings" and "provide supported employment services to all qualified class members."  This court recognized and relied upon this limitation in denying defendant's Motion to Dismiss.  Citing multiple allegations by plaintiffs, this court concluded that this case focuses on "the provision of supported employment services to those individuals who qualify for and are interested in them."  *Lane v. Kitzhaber*, 841 F Supp2d 1199, 1207-08 (D Or 2012).  It further noted that "participation for persons with disabilities in sheltered workshops 'must be a choice, not a requirement.'"  *Id* at 1204 (citation omitted).

Similarly, the United States explicitly addresses the facts and claims of "individuals who qualify for and do not oppose [supported employment] services."  Complaint in Intervention, ¶ 6. Its claims also focus on "qualified individuals with disabilities" and, thus, are limited to persons

7 –OPINION AND ORDER

who meet the eligibility criteria for Oregon's employment services system and do not oppose receiving services in an integrated setting. *Id*, ¶¶ 83-84, 89-90. Similarly, the United States seeks relief only as to individuals "who are unnecessarily placed in segregated settings, as well as individuals with I/DD who are at risk of unnecessary placement in segregated settings, consistent with their individual needs." *Id*, Prayer, ¶ B(1).

One key practice challenged by plaintiffs is the process for assessing individuals' experience, abilities, needs, and preferences to determine who will receive supported employment services. Through this process, plaintiffs seek to give individuals in sheltered workshops information about and an opportunity to choose supported employment services. However, they do not seek to compel anyone to leave a sheltered workshop against his or her will after being given an informed choice, to close sheltered workshops, or to prevent admission to sheltered workshop.

In certifying the class, this court explicitly incorporated into the class definition the requirement that class members must be qualified for supported employment services, meaning that they must be eligible for and desire these services. Moreover, based upon the express representations of plaintiffs' counsel, this court found that "plaintiffs do not seek to close all sheltered workshops or force people to leave the workshop if that is not their preference." *Lane*, 283 FRD at 600. In their briefs and at the hearing opposing intervention, plaintiffs and the United States confirmed that they seek relief solely for "qualified persons with disabilities" who, after being provided meaningful information and the opportunity to learn about integrated employment, do not oppose leaving their segregated workshop.

Moreover, there is no evidence that modifying Oregon's employment services system by expanding integrated employment opportunities would deny sheltered workshop services to class

members who wish to remain in these settings.  Rather, according to defendants at the June 21, 2012 hearing, funding for employment services is attached to the individual and moves with the individual.  Thus, each individual in a sheltered workshop who chooses to remain will continue to have his or her waiver funding allocated for sheltered workshop services, even if other individuals elect to allocate their funding for integrated employment services.  Thus, the proposed Intervenors' interest in segregated employment will not be impaired by plaintiffs' claim for integrated employment options.  As a result, they have no legally protectable interest in sheltered workshops that will be impaired by funding for integrated employment services.

Despite plaintiffs' allegations and public statements, the proposed Intervenors suspect that their undisclosed goal is to close all sheltered workshops.  Conceding that no notice to class members is required for this FRCP 23(b)(2) class action, they complain about receiving incomplete and inaccurate information concerning this litigation and a cloak of secrecy surrounding the parties' prior settlement negotiations.  Plaintiffs and the United States respond that these complaints are unfounded, pointing to public forums they have held about this case, blaming misinformation on sheltered workshop providers and their trade association, chastising defendants for not seeking input from the proposed Intervenors when formulating the Executive Order, and relying on the attorney-client privilege surrounding the settlement negotiations.  Regardless of what has been said or done by the parties outside of court, this case is governed by the parties' allegations and this court's understanding of the claims and defenses at issue.

In similar situations, other courts have denied intervention in the liability phase of *Olmstead* cases to individuals alleging that the legal claims and relief sought would deny them the choice to remain in an institution.  *Benjamin I*, 432 Fed App'x at 99 (holding that in the absence of evidence that individuals will be forcibly removed from an institution, potential

9 –OPINION AND ORDER

reallocation of resources is too speculative to give rise to a right to intervene); *Ligas ex rel. Roster v. Maram*, 478 F3d 771, 774 (7th Cir 2007) (complaint, on its face and as interpreted by district court, did not foreclose choice to remain in institution).  Given that the parties have been unable to settle this case and are litigating it aggressively, there is no need for the proposed Intervenors to participate as parties in the liability phase.  Because they intend to revisit the issue of class certification, intervention will further complicate an already complicated process. Should they wish an opportunity to be heard at any stage, they may seek to submit *amicus* briefs.

Although the proposed Intervenors lack an interest in the liability phase of this action, they may be able to intervene in the remedial phase.  *Forest Conservation Council v. United States Forest Serv.*, 66 F3d 1489, 1499 & n11 (9th Cir 1995) (The applicants "are entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2) in the portion of the proceedings addressing the injunctive relief sought by plaintiffs . . . [even though they] cannot claim any interest that relates to the issue of the [defendant's] liability.").  In fact, the cases cited by the proposed Intervenors all address situations where courts allowed intervention by non-class members to challenge proposed settlement agreements that adversely affected them.  Although denying intervention at the liability phase, the Third Circuit allowed intervention post-settlement specifically because the proposed settlement – unlike the complaint and class certification – actually threatened a significant, legally protectable interest.  *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F3d 938, 942 (3rd Cir 2012).  Even then, other courts have denied intervention post-settlement and instead allowed interested persons to comment on the proposed settlement at the fairness hearing.  *See Rolland v. Patrick*, No. 98-30208-KPN, 2008 WL 4104488 (D Mass Aug. 19, 2008) (denying intervention and decertification to parents and guardians of certain class members in nursing facilities who opposed settlement agreement, but carefully considering

10 –OPINION AND ORDER

objections to agreement); *Brown ex rel. O'Neil v. Bush*, 194 Fed App'x 879, 880-81 (11th Cir 2006) (denying intervention to non-class members as untimely, but allowing them to testify at the fairness hearing regarding closure of residential facility for mentally retarded individual).

Although the proposed Intervenors liken the Executive Order to a settlement agreement, they are not comparable. The Executive Order is an independent policy "implementing new guidelines and goals" of the Governor. It does not reflect the relief requested by plaintiffs or the United States, does not constitute a change in defendants' legal position, and does not and cannot constitute enforceable relief requested of, or eventually ordered by, this court.

C.     **Adequate Representation**

To establish inadequacy of representation, the Ninth Circuit considers the following factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of the proposed intervenors' arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F3d 1078, 1086 (9th Cir 2003) (citation omitted).

"The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Id* (citations omitted). The burden on the proposed intervenor is minimal since it merely needs to show that the representation of its interest by the existing parties *may* be inadequate. *Id* (citation omitted). However, "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F3d at 951 (citation omitted). Moreover, a presumption of adequate

representation exists "when the government is acting on behalf of a constituency that it represents," as here. *United States v. City of L.A., Cal.*, 288 F3d 391, 401 (9th Cir 2002).

The proposed Intervenors raise no distinct interests or claims not already advocated by the existing parties, including decertification of the class. Nonetheless, through the implementation and execution of the Executive Order, they argue that defendants appear to align their interest with plaintiffs and, thus, do not adequately represent the proposed Intervenors' interest.

Unlike the "ultimate objective" of the proposed Intervenors to maintain the option of sheltered workshops, defendants support the Executive Order which seeks to "close the front door" to sheltered workshops by ending new admissions. However, as noted above, the Executive Order is a unilateral action by Oregon's Governor and does not in any way bind plaintiffs, the United States, or the court in this case. The proposed Intervenors may not agree with defendants on every provision in the Executive Order, but they have articulated no reason why defendants, as a result of the Executive Order, would be likely to abandon defense of this lawsuit. Indeed, the defendants are using the Executive Order to support their affirmative defenses and defeat plaintiffs' claims which is the same "ultimate objective" shared by the proposed Intervenors.

The proposed Intervenors offer no compelling reason as to why plaintiffs and the United States on one hand and the State of Oregon on the other hand will not adequately represent their interests in this litigation. Therefore, they have failed to rebut the presumption of adequate representation.

///

///

## II.        Permissive Intervention

For permissive intervention under FRCP 24(b), the applicant must demonstrate that: (1) his claim or defense shares a common question of law or fact with those of the parties; (2) there is independent jurisdiction over the claim or defense; and (3) the application is timely. *League of United Latin Am. Citizens v. Wilson*, 131 F3d 1297, 1308 (9th Cir 1997). Even where all three prerequisites for permissive intervention are met, the court has considerable discretion in denying a motion for permissive intervention. *In re Benny*, 791 F2d 712, 721 (9th Cir 1986). Courts must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights and also may consider whether the intervenor's interests are represented by other parties. *Perry*, 587 F3d at 955 (citation omitted); *United States ex rel. Richards v. De Leon Guerrero*, 4 F3d 749, 756 (9th Cir 1993) (denying permissive intervention where the government party to the case made the same arguments as the proposed intervenors and would adequately represent their interests).

Even assuming that the proposed Intervenors' motion is timely, it fails to assert a claim or defense that shares a common question of law or fact with those of the parties. First, whether a case proceeds as a class action is plainly not sufficient, in and of itself, to justify intervention. It is only the underlying legal claim or defense, not the procedural mechanism of the class action, that may justify intervention. Second, the parties have made no claim or assertion that integrated employment is appropriate for all class members. Rather, the plaintiffs and the United States only seek integrated employment services for individuals who qualify for them. Third, the parties have asserted no claim or defense that integrated employment is desired by all class members. Those who oppose integrated employment will not be required, pressured, or forced to accept it. Fourth, as discussed above, there is no right to, or even a legitimate legal interest in,

13 –OPINION AND ORDER

compelling the expenditure of public funds consistent with the beneficiaries' needs and choices. Fifth, neither plaintiffs nor the United States are seeking to impose unwanted relief on the class. Because none of the proposed intervenors' identified questions of law and fact arise from the parties' claims or defenses, permissive intervention is inappropriate. *See Sierra Club v. U.S. Envtl. Prot. Agency*, Case No. 13-cv-2809-YGR, 2013 WL 5568253, at *5 (ND Cal., Oct. 9, 2013) (denying permissive intervention where proposed intervenors failed to demonstrate common questions of law or fact and finding that "opening the door to [proposed intervenor's] additional contentions would only serve to confuse the matters at issue in the complaint and to delay the proceedings unnecessarily").

Given the explicit focus of this lawsuit on expanded choice for employment services, the participation on both sides of two governmental entities, the complexity and stage of the litigation, and the stated goal of the proposed Intervenors to re-litigate class certification, permissive intervention is not warranted at this stage.

## ORDER

For these reasons, the Motion to Intervene (docket #200) is DENIED.

DATED June 20, 2014.

s/ Janice M. Stewart

Janice M. Stewart
United States Magistrate Judge

14 – OPINION AND ORDER