UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PAULA LANE, *et al*, on behalf of themselves
and all others similarly situated, and

UNITED CEREBRAL PALSY OF OREGON
AND S.W. WASHINGTON,

        Plaintiffs,

    v.

KATE BROWN, Governor of the State of
Oregon, *et al*,

        Defendants.

Case No. 3:12-cv-00138 -ST

OPINION AND ORDER

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor,

    v.

STATE OF OREGON,

        Defendant.

STEWART, Magistrate Judge:

Plaintiffs, eight individuals with intellectual and developmental disabilities ("I/DD") and one institution, filed this action on January 25, 2012, to challenge the State of Oregon's overreliance on segregated sheltered workshops for employment services based on Title II of the

1 – OPINION AND ORDER

Americans with Disabilities Act of 1990 ("ADA"), 42 USC §§ 12131-34, Section 504 of the Rehabilitation Act of 1973, 29 USC § 794(a), and *Olmstead v. L.C. ex rel. Zimring*, 527 US 581 (1999). On August 6, 2012, the court certified a class of "all individuals with intellectual and developmental disabilities in Oregon who are in, or have been referred to, sheltered workshops," and who are "qualified for supported employment services, meaning that they must be eligible for and desire those services." *See Lane v. Kitzhaber*, No. 3:12-cv-00138-ST, 2014 WL 2807701, at *8 (D Or June 20, 2014). On May 24, 2013, the United States filed its Complaint in Intervention adding a second target population of transition-aged youth with I/DD who were "at risk" of being "placed in sheltered workshops."

After almost four years of litigation, extensive fact and expert discovery, and prior unsuccessful efforts to resolve the dispute, the parties engaged in lengthy settlement negotiations a few months before trial and signed a Proposed Settlement Agreement ("Agreement"). This court preliminarily approved the Agreement (docket #346), held a fairness hearing (docket #364), granted the Joint Motion for Final Approval of Proposed Settlement Agreement (docket #366), and entered a Judgment on January 27, 2016 (docket #384).

Pursuant to Section XVII(15) of the Agreement, the United States and the State of Oregon agreed to bear their own attorney fees and costs and to permit class counsel to seek an award of reasonable attorney fees and costs. In addition, the parties agree to "work in good faith to agree on the amount of the reasonable fees and costs" to be paid to class counsel. As a result of intensive negotiations, the parties reached a settlement of plaintiffs' attorney fees and costs incurred since this case was filed (February 1, 2011) through the conclusion of the mediation (August 31, 2015) in the sum of $5,250,000 ($4,991,225 in attorney fees and $258,775 in costs).[1]

---

[1] The parties have agreed to separately negotiate attorney fees and costs from September 1, 2015, through resolution of this motion.

Plaintiffs have now filed a Motion for Attorney Fees and Costs (docket #379) in that amount. For the following reasons, that motion is granted.

## LEGAL STANDARD

In a class action, FRCP 23(h) authorizes this court to award reasonable attorney fees and costs "that are authorized by law or by the parties' agreement." An award to class counsel in this case is authorized by law. Having obtained substantial relief, plaintiffs are the prevailing party and entitled to recover their attorney fees and costs under the ADA. 42 USC § 12205; *Molski v. M.J. Cable, Inc.*, 481 F3d 724, 730 (9th Cir 2007) (the ADA gives courts discretion to award attorney fees to the prevailing party). A plaintiff is considered to prevail "when he or she enters into a legally enforceable settlement agreement against the defendant," as in this case. *Barrios v. Cal. Interscholastic Fed'n*, 277 F3d 1128, 1134 (9th Cir 2002).

However, to obtain an award of attorney fees and costs, a party must file a motion with notice to class members who may object to the motion. FRCP 23(h)(1)-(2). That notice was provided in this case by means of the notice to class members of the terms of the Agreement, which included the provision regarding attorney fees and costs, prior to the fairness hearing. In accordance with FRCP 23(c)(2), the court should guard against abusive practices and ensure that all settlement terms, including the amount of attorney fees and costs, are fair and reasonable.

## DISCUSSION

### I. Attorney Fees

The starting point for establishing a reasonable attorney fee is the lodestar which consists of the reasonable number of hours expended multiplied by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 US 424, 433 (1983); *Cunningham v. Cnty. of Los Angeles*, 879 F2d 481, 484 (9th Cir 1988) (establishing the use of lodestar approach to calculate fee awards in § 1988 case);

*Jordan v. Multnomah Cnty.*, 815 F2d 1258, 1262 (9th Cir 1987) (finding lodestar is most useful starting point for determining attorney fee awards).

Plaintiffs calculate their lodestar as $6,638,907.  Applying a voluntary 10% reduction in the lodestar, plaintiffs submit that $5,975,016 is a reasonable lodestar for this case.  Based on a review of the 30 exhibits submitted by plaintiffs in support of their motion, this court agrees.

### A. Number of Hours

A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation.  *Hensley*, 461 US at 434 ("Counsel . . . should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary"). "Those hours may be reduced by the court where the documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."  *Chalmers v. City of L.A.*, 796 F2d 1205, 1210 (9th Cir 1986), *amended in part on denial of reh'g en banc*, 808 F2d 1373 (1987), citing *Hensley*, 461 US at 433–34.

Plaintiffs were represented by numerous attorneys, paralegals and support staff at the Center for Public Representation ("CPR") in Northampton, Massachusetts, Disability Rights Oregon ("DRO") in Portland, Oregon, and two private law firms in Portland, Oregon (Miller Nash Graham & Dunn LLP and Perkins Coie LLP).  However, this large legal team is justified by the nature of this case which was complex and presented unique challenges, required extensive resources, and demanded exceptional legal skills.  Fortunately, considerable effort was expended throughout the litigation to ensure efficiency, avoid duplication and facilitate communication through the organizational efforts of lead counsel at CPR.  Schwartz Decl. (docket #379, Ex. 6), ¶¶ 24-44; Rubin Decl. (docket #379, Ex. 10), ¶ 3.

In addition, each of the attorneys, paralegals and staff maintained detailed time records and has deleted or reduced any entry that was duplicative, excessive or otherwise not of the type ordinarily billed to a paying client. Schwartz Decl., ¶¶ 16-20; Costanzo Decl. (docket #379, Ex. 7), ¶¶ 20-23; Toner Decl. (docket #379, Ex. 8), ¶¶ 9-13; Wilde Decl. (docket #379, Ex. 9), ¶¶ 12-15; Rubin Decl., ¶ 4; Reichman Decl. (docket #379, Ex. 11), ¶¶ 34-37.  Altogether, plaintiffs voluntarily have reduced their number of hours by almost 1,050 hours (docket #379, Exs. 2-5). Furthermore, each firm has eliminated over 1,140 hours incurred by 14 lawyers and 17 paralegals/support staff who worked on this case (docket #379, Exs. 2, 4-5).

Although this court has not reviewed each and every time entry in the voluminous billing records submitted by plaintiffs, the representations made as to the number of hours incurred and reduced in this case leads this court to conclude that the end result is reasonable.

### B.     Hourly Rates

The next step in the lodestar analysis requires the court to determine a reasonable hourly rate for the services provided. The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F3d 973, 979 (9th Cir 2008).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  *Id*, citing *Barjon v. Dalton*, 132 F3d 496, 500 (9th Cir 1997).  The "relevant community" for this case is Portland, Oregon, where this court sits.

Pursuant to Section XVII(15)(c) of the Agreement, the requested hourly rates are based upon the 2012 Oregon State Bar Economic Survey. That survey is the best evidence of the prevailing rate in Oregon.  *Atl. Recording Corp. v. Andersen*, No. CV 05-933-AC, 2008 WL

5 – OPINION AND ORDER

2536834, at *14 (D Or June 24, 2008), citing *Roberts v. Interstate Distrib. Co.*, 242 F Supp2d 850, 857 (D Or 2002) (remaining citations omitted); *also see* U.S. Dist. Court., Dist. of Or., *Message from the Court Regarding Fee Petitions*, https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last updated Feb. 6, 2013) ("Oregon Dist. Ct. *Message*").

Plaintiffs draw on the hourly rates in that survey for the All Attorney Scale for Portland, Oregon, and select those rates that reflect the respective years of experience of each attorney, ranging from the 75th percentile for most attorneys, the 80th percentile for two senior attorneys from DRO and CPR, and the 85th percentile for the two lead counsel from CPR and Miller Nash. Plaintiffs are not seeking any increase in those rates adjusted for inflation.

The requested rates for the CPR attorneys are consistent with fee awards in other cases. Schwartz Decl. ¶¶ 48-9, 51-6; Costanzo Decl. ¶¶ 33, 35-40; Toner Decl. ¶¶ 22-3, 25. These rates are less than the market rates of their counterparts in private Portland law firms and are consistent with approved rates by this court, given each attorney's experience and skills. Rubin Decl. ¶ 3. The rates for DRO attorneys are similarly consistent with prior fee awards and reflect the skills and experience of their attorneys. Wilde Decl. ¶¶ 8-10; Reichman Decl. ¶¶ 54-60. The rates of each attorney and paralegal at Miller Nash and Perkins Coie are significantly less than their market rates. Rubin Decl. ¶¶ 4(c), 5(d), 6(b), 7(c), 8(c), 9(c); Reichman Decl. ¶¶ 39-48.

As a result, the hourly rates sought by class counsel are reasonable.

C.     **Conclusion**

To avoid any question of duplication or unnecessary time, plaintiffs' fee request includes a further reduction of the lodestar by an additional 10%, resulting in a final lodestar of

$5, 250,000. Both plaintiffs' and defendants' attorney fee expert consultants agree that the reduced lodestar is reasonable. Markowitz Decl. (docket #279, Ex. 12), ¶ 4; Skerritt Decl. (docket #279, Ex. 13), ¶ 6.

Moreover, the Agreement includes a negotiated cap, determined with the assistance of the mediator (Magistrate Judge Acosta) on future attorney fees for monitoring the implementation of the Agreement. Class counsel have an ethical duty to ensure that defendants achieve substantial compliance with any remedial order, and all reasonable time spent on ordinary monitoring traditionally is fully compensable. *Prison Legal News v. Schwarzenegger*, 608 F3d 446, 451 (9th Cir 2010) (holding that fees for monitoring of settlement agreement may be awarded pursuant to § 1988). This fee cap represents a significant concession by the plaintiffs and adds to the reasonableness of their request.

The settlement amount is approximately 27% less than the lodestar total calculated by plaintiffs and about 20% less than the reduced lodestar amount. According to the parties' attorney fee expert consultants who participated in the fee negotiations, the settlement amount resulted from arms' length, good faith, and vigorous negotiations between the parties and yielded an overall result that is reasonable. Markowitz Decl., ¶ 5; Skerritt Decl., 6. Thus, this court concludes that the settlement amount is fair and reasonable.

## II.  Costs

Plaintiffs seek costs of $258,775, consisting of approximately $86,000 in expert expenses incurred by DRO, approximately $73,000 in litigation costs (experts, transcripts, subpoenas, and third party document management) incurred by Miller Nash and Perkins Coie, and $98,000 in litigation costs and travel related expenses for four attorneys from CPR over the four years since the inception of this case (docket #379, Exs. 1, 27-30). According to plaintiffs, these costs are

considerably less than the actual costs incurred in this case, the vast portion of which were borne by the United States.  This court has no basis to question the reasonableness of this request.

## **ORDER**

Plaintiffs' Motion for Attorney Fees and Costs (docket #379) is GRANTED in the sum of $5,250,000.

DATED February 11, 2016.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

8 – OPINION AND ORDER